21-506-cv
Ivanhoe Inv. Partners, L.P. v. Windsor Sec., LLC

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of February, two thousand twenty-five.

PRESENT:  ROBERT D. SACK,
          GERARD E. LYNCH,
          RAYMOND J. LOHIER, JR.,
               *Circuit Judges*.

-----------------------------------------------------------------
IVANHOE INVESTMENT
PARTNERS, L.P., IVANHOE
ASSOCIATES, LLC, GEOFFREY H.
CHAPIN,

       *Plaintiffs-Counter Defendants-Appellees*,

     v.                           No. 21-506-cv

WINDSOR SECURITIES, LLC, MFI
ASSOCIATES, LTD. PROFIT
SHARING PLAN, PPSP TRUST
INVESTMENT, LLC,

       *Defendants-Counter Claimants-Appellants.*

-----------------------------------------------------------------

FOR APPELLANTS:

DAVID E. DOBIN (Ari J. Hoffman, *on the brief*), Cohen and Wolf, P.C., Bridgeport, CT

FOR APPELLEES:

PHILIP RUSSELL (Catherine R. Keenan, *on the brief*), Philip Russell, LLC, Cos Cob, CT

Appeal from a judgment and order of the United States District Court for the District of Connecticut (Alvin W. Thompson, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment and order of the District Court are AFFIRMED.

Appellants Windsor Securities, LLC, MFI Associates, Ltd. Profit Sharing Plan (the "Windsor Parties"), and PPSP Trust Investment, LLC appeal from a March 26, 2020 judgment of the United States District Court for the District of Connecticut (Thompson, *J.*) dismissing their securities fraud counterclaims and, following a bench trial, limiting the scope of their contract counterclaims against Appellees Ivanhoe Investment Partners, L.P., Ivanhoe Associates, LLC, and Geoffrey H. Chapin. They also appeal from the District Court's February 2, 2021 order denying their motion for post-judgment relief. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to affirm.

## I.    Securities Fraud

The Windsor Parties assert counterclaims alleging securities fraud under Pennsylvania law, 70 Pa. Stat. § 1-401 (Count II), and federal law, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5 (Count III).  Their counterclaims rest on a series of related representations made by Chapin about the security of their invested funds.  Although Counts II and III of the Second Amended Counterclaims specifically identify only one such representation — that "Windsor and MFI's capital would not be removed from the Ivanhoe/MFI/Windsor Escrow without Windsor or MFI's consent," Joint App'x 60–61, 62 — the incorporated allegations describe several similar statements about fund security.  The Windsor Parties argue that they adequately alleged that these statements are fraudulent because Appellees made them without confirming the existence of fund security measures and continued to affirm them even after doubts about fund security emerged.

To state a claim under Section 10(b) of the Securities Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission . . . ; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance

3

upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *IWA Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 145 (2d Cir. 2021) (quotation marks omitted). "Section 401 of the Pennsylvania Securities Act is modeled after Rule 10b-5 of the federal securities laws, and requires virtually the same elements of proof." *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 214 (3d Cir. 2001) (quotation marks omitted).[1] "Any complaint alleging securities fraud must satisfy the heightened pleading requirements of the [Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(b),] and Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud." *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).[2] The parties dispute only whether the Counterclaims adequately allege a material misrepresentation and scienter.

---

[1] "In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). Parties represented by competent counsel "know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* at 375–76 (quotation marks omitted). No party questions, and we therefore assume, that scienter is a required element of a claim brought under § 1-401 of the Pennsylvania Securities Act. *But see Mimi Invs., LLC v. Tufano*, 297 A.3d 1272, 1274, 1288 (Pa. 2023) (distinguishing federal securities law and § 1-401(b) with respect to scienter).

[2] No party questions, and we therefore assume, that the heightened pleading requirements of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(b), apply to a claim brought under § 1-401 of the Pennsylvania Securities Act. *But see* 15 U.S.C. §§

We affirm the judgment of the District Court dismissing the Windsor Parties' securities fraud counterclaims on the basis that they failed to state with particularity facts giving rise to a strong inference of scienter, and thus we do not address the District Court's analysis of the remaining elements. "[T]he inference of scienter must be more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 48 (2d Cir. 2023) (quotation marks omitted). Such an inference can be established by alleging conduct that is "at the least . . . highly unreasonable and which represents an extreme departure from the standards of ordinary care." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009).

The Windsor Parties argue that they have adequately alleged with particularity facts giving rise to a "strong inference" that defendants acted with "conscious recklessness — *i.e.*, a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*." *Id.* (quotation marks omitted); *see Setzer v.*

---

78u–4(b)(1) (providing that the heightened pleading standard applies "[i]n any private action arising under this chapter," *i.e.*, under the federal Securities Exchange Act), 78u–4(b)(2) (same); *see also Majer v. Sonex Rsch., Inc.*, No. 05-CV-606, 2006 WL 2038604, at *12 n.15 (E.D. Pa. July 19, 2006) (holding that claims under Section 1-401, as state law claims, "are not subject to the heightened pleading requirements of the [PSLRA]").

*Omega Healthcare Invs., Inc.*, 968 F.3d 204, 213 (2d Cir. 2020). But they failed to allege any facts that "created a strong inference that [Appellees] had a state of mind approximating an actual intent either to relay false or misleading information . . . or to aid in the fraud." *S. Cherry St.*, 573 F.3d at 112. Allegations that merely describe a lack of due diligence, without more, will not give rise to a strong inference of conscious recklessness. *See id.* at 102–03, 111–14; *see also Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996). Because the Windsor Parties allege only that Chapin failed to perform due diligence that might have revealed material misrepresentations related to fund security, their counterclaims fall short of supporting a strong inference of conscious recklessness.

The Windsor Parties also point to their allegations that between April and December 2009, Chapin and Ivanhoe harbored "concerns" about the security of the funds and sought confirmation from multiple parties but continued to assure investors that the funds remained intact without ever verifying that they were. Joint App'x 54–55. This pattern of making reassuring statements to investors while internally investigating concerns, the Windsor Parties contend, demonstrates that Chapin and Ivanhoe acted with conscious recklessness approximating fraudulent intent. We are not persuaded. That Chapin and

6

Ivanhoe had "concerns" that prompted them to try to confirm that the funds were secure does not, without more, establish a strong inference that they knew their statements were false or that their conduct represented an extreme departure from the standards of ordinary care. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106–07 (2d Cir. 2015), *abrogated on other grounds by Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024).

## II.    Breach of Contract

PPSP Trust Investment challenges the District Court's interpretation of the guarantee provision in the Joint Venture Agreement, which states:

> Ultimate Responsibility.    Ivanhoe corporately, and its principal, Geoffrey H. Chapin, personally, are guaranteeing to PPSP, PPSP's principal[] for each trade.  PPSP understands that, in the event of an adverse event, Ivanhoe and Chapin may look to Errors-and-Omissions, malpractice, or other policies held by Century Title or other participants in any given trade, but Ivanhoe, and Chapin personally, hereby agree that they are liable to PPSP for principal regardless of their success in securing payment from any other party.

Joint App'x 201.  Under Pennsylvania law, which governs the Agreement's interpretation, "a contract that is unambiguous on its face must be interpreted according to the natural meaning of its terms, unless the contract contains a latent ambiguity." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 96

7

(3d Cir. 2001); *see also Lesko v. Frankford Hosp.-Bucks Cnty.*, 15 A.3d 337, 342 (Pa. 2011).

We agree with the District Court that the Agreement's guarantee is unambiguously limited to individual executed trades rather than all deposited funds. "Courts do not assume that a contract's language was chosen carelessly." *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001). Here, the guarantee's reference to "principal for each trade" rather than "principal" or "deposited funds" demonstrates that it was intended to cover only losses on completed trades rather than any loss of deposited funds.

PPSP's alternative interpretation not only would fail to give proper weight to the guarantee's chosen terms but also would conflict with the Agreement's consistent treatment of "trades" as discrete events. "In interpreting a contract, we must give effect to all its provisions," so the discussion of "trades" elsewhere in the contract guides our interpretation of "principal for each trade" in the guarantee. *See MBC Dev., LP v. Miller*, 316 A.3d 51, 64 (Pa. 2024). And elsewhere in the Agreement, "trades" are treated individually. For example, the "BACKGROUND" section specifies that funds "will only be used to purchase the specific excess fallout from *the current Ivanhoe Investment Partners, LP trade*." Joint

8

App'x 200 (emphasis added).  And even the "adverse event" provision in the guarantee refers to "participants in *any given trade*."  Joint App'x 201 (emphasis added).  Those passages thus reinforce the idea that the guarantee was intended to cover only losses on specific, completed trades.

Nor are we persuaded by PPSP's argument that this interpretation renders the guarantee illusory since the Agreement contemplates funds remaining in escrow even during trades.  The parties deliberately chose to limit the guarantee to "principal for each trade" while also creating a structure designed to minimize trading risks through the escrow mechanism.  That these protective measures may have rendered the guarantee's operation narrow does not render it illusory.  Accordingly, because no trades ever occurred, we agree with the District Court that the guarantee was never triggered.

We have considered Appellants' remaining arguments and conclude that they are without merit.  For the foregoing reasons, the judgment and order of the District Court are AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9